The court will proceed to the fifth case, Knopick v. Jayco. Mr. Cremins? Good morning, Your Honor. May it please the court, Patrick Cremins on behalf of the appellant and the plaintiff below. Defendant Jayco provided a written warranty on a recreational vehicle that was subject to a number of repairs almost immediately after purchase. The issue that's really before the court is why did Jayco perform these repairs? Before you get to that, could you explain to us why Mr. Knopick is the right plaintiff here? Well, I cannot explain directly why the business entity is not also named as the plaintiff. Wasn't that your choice? That was not my choice, Your Honor. I know it's not a good answer, but I did not represent the plaintiff at that time, at the time the lawsuit was filed. So I've been trying to think about this, whether this has to go do with our jurisdiction understanding or whether it's just an issue of the real party and interest, which may have been waived. Can you help me out? I believe it may be the latter issue of the real party and interest. Mr. Knopick purchased the recreational vehicle through the LLC solely for the purpose of sales tax advantage. So did the LLC have any other purpose? No other purpose whatsoever. Are you admitting your client has therefore been engaging in a tax scam? I would not agree with that, Your Honor. This is a practice that's industry-wide that dealerships, in fact, this was- Why is it an industry-wide tax scam? Well, the dealerships do request that or do offer, they want to make sales. They want- I understand that, but I've got to say, given the arguments that have been made here, it's not clear to me why we shouldn't treat this whole thing as a fraudulent transaction both ways. The defendant did, your client did pay an extra amount for an extended warranty, right? I believe so, yes. And the defendant took money for that. The dealership took money for that. The dealership took money for that with paper showing, according to the defendant's theory, that the warranty was invalid because it was in the name of an LLC, right? Well, this is not the extended warranty. This is the manufacturer's warranty, but that was part of the consideration paid for the recreational vehicle. Okay. That is correct. Is the extended warranty good for LLCs? The- There was not a claim made under any extended warranty, and as I sit here now, I'm not familiar with the terms of any warranty other than the manufacturer's warranty that covers the vehicle. The reason that we're here is to try to figure out why these repairs were performed shortly after purchase, and there have been three reasons or theories advanced as to why, only one of which is supported by the record, and we're on summary judgment. We're actually here on a legal question, which is whether this warranty, this claim is excluded by the warranty. It's specifically excluded because the RV was purchased in a business name, and the argument that you're making about repairs is covered by another provision in the warranty that said that these are goodwill repairs and that doesn't alter the terms of the warranty, so it seems to me you're out as a matter of law. It doesn't matter what the reasons for the repairs were. Well, there has to be some evidence as, well, repairs were performed, and if the warranty was voided, then the repair should not have been performed because there is no warranty, unless Jayco just out of- The provision on that says these are goodwill repairs. If we voluntarily perform repairs, they're goodwill repairs. They don't alter the terms of the warranty. And that is what the warranty says, but that's not what their inspector said. Well, it doesn't matter. That's what the warranty said, and so you can't claim protection under this warranty. We can't claim if Jayco waived those provisions. If Jayco, by performing, because the repairs were performed for free under the warranty- This provision specifically provides that they cannot be waived by the performance of goodwill repairs. Yeah, the problem is, there's a practical problem here. Under your theory of waiver, just apart from the text, if a dealer or manufacturer authorizes $1,000 worth of repairs, it is reinstating an otherwise void warranty that could wind up costing it hundreds of thousands of dollars, right? You really don't want people to fight over the $1,000 repairs, do you? I would say not. No, that's why the waiver provision, why the non-waiver provision is there about goodwill repairs. That is correct. Can I ask you, what relief were you seeking in the district court? In seeking for damages? Yes. Diminishment in value damages or special damages under the SEC? How much? The amount wasn't determined. It's essentially going to be the difference between the purchase price- You agree it was greater than $50,000? Yes, Your Honor. Okay, thank you. It would be the difference between the purchase price and possibly the depreciated value of the vehicle given the discovery of the defects. And the issue of waiver comes from the inspector that JACO hired and attached the report to the motion for summary judgment where the inspector goes through, it's a lengthy report going through a list of repairs that needed to be performed from slide outs to the driver's window to the floors and the stove and the bathroom. And all of these repairs are described by their inspector as warranty items or related or covered under the warranty. And so because their inspector cast the repairs in that light, that leads to the inference that JACO performed these repairs- That can't overcome what the contract says. That's parole evidence. There's no ambiguity here. You're excluded. Your claim is excluded under three separate provisions of this warranty text. So the inspector's conduct can't restore coverage. Well, I respectfully disagree. This is not our evidence. This was JACO's evidence that they introduced. It's not what we offer. And it would be relevant if you reach the merits. But can I ask, what is plaintiff's connection to the client's connection to Montana? I believe that that connection was made at the behest of the dealership who sold. I'm not sure, I'm not aware of any other connection other than the introduction. Was the vehicle registered in Montana? Yes, I believe it was. I do believe it was. The, again, I believe that the issue with the warranty language is to take from the cases earlier, a couple of horses of a different color. The voiding of the warranty results in there being no warranty whatsoever. If there's no warranty whatsoever, then no repairs should have been performed. Again, unless there was some evidence in the record, not conjecture or speculation, but evidence in the record as to why JACO performed these repairs. And if these repairs were goodwill repairs subject to repairs because of some exclusion in the warranty, the, it should have been on JACO then to provide some evidence at summary judgment through an affidavit or through warranty repair records showing that this was a goodwill repair. Instead, the only evidence presented regarding the actual repairs was from their own hired inspector who labeled all these as warranty concerns and warranty items. The inspector did go through a seemed to address a familiarity with the warranty, but these issues were all described as being covered under the warranty. And there was never any indication at all that by anything in the record that these repairs were anything other than the warranty. So I believe that on summary judgment that it's improper to make that inference when there is an inference that does exist that the repairs were, could have been performed pursuant to the warranty. Another inference, as the benches pointed out, is that the repairs could have been performed pursuant to the goodwill exception, or perhaps the warranty was completely voided and was no longer a full force in effect. And this was, as your honor pointed out, just in the interest of beyond goodwill, of just making sure that the consumer is happy. So I see that I've run close to the time. I'd like to reserve the rest of my time for rebuttal. All right. Thank you, Mr. Grimmett. Mr. Gasper. May it please the court, Trevor Gasper on behalf of JACO. Before I get to my main argument, I do want to address some of the questions that Judge Hamilton raised. First of all, I bristle any time that a 50-year-old company like JACO could be lumped into any accusation of committing fraud. I think that might have come from a misunderstanding of what the extended warranty at the time of purchase was. The extended warranty is not offered by JACO. It's offered by third parties with whom dealers contract. In the RV world, unlike the automobile world, RVs, companies do not control or franchise with their dealers. In fact, dealers carry many competing lines and brands of RVs. Dealers also make money selling extended warranties. They might sell paint protection. They might sell tire coverage, all things that are not provided by manufacturers like JACO. So if dealers are engaged in a widespread practice to evade sales taxes, that's not your responsibility. My point first on that is I'm talking about the extended warranty only. There was no artifice under which JACO, knowing that there is no warranty coverage, is somehow accepting extra money for a warranty of no effect. That's part one. Part two is there is no industry-wide scheme to avoid sales tax. In fact, manufacturers try to educate the public regularly on the effects of registering your motorhome in Montana. A lot of people do, right? I wouldn't say a lot of people. I mean, personally, I have litigated where I've been lead counsel in the last three years. I've litigated 48 cases. I've overseen nationwide probably another 60 cases, and only two involve a motorhome that was registered in the name of Montana LLC. I don't think this is widespread. I also want to diffuse this idea that this Montana LLC that we're talking about here was set up to purchase this motorhome. It wasn't. It's not part of the record because it wasn't an issue that we had to litigate, but the plaintiff testified at his deposition that this LLC existed before this purchase. That's because he owned another RV in it, he owns an airplane in it, and he owns several other vehicles in this Montana LLC. To the question of standing that Your Honor raised, I do believe it is a real party and interest question. Prudential standing is not a constitutional issue of standing. There is a case of controversy here, just a question of who has the right to pursue it. Down below, we did receive discovery showing some kind of an assignment from the LLC to the But what this case comes down to is a decision. When Mr. Nopik decided to purchase a luxury motorhome for $414,000 back in 2012, he had a choice. He could purchase that motorhome individually in his own name, he could have his motorhome covered by the Integra two-year limited warranty and pay sales tax, or he could purchase it, register it, and title it in the name of his Montana business, Montana Freedom Riders LLC, and obtain tens of thousands of dollars in sales tax benefits. But he wouldn't have that warranty coverage. And Mr. Nopik made that choice. He decided to save that sales tax money, and he's before this court asking the court to give it to him both ways. But under the warranty, he doesn't get it both ways. The district court got it right when it granted summary judgment. Now we know Mr. Nopik made a conscious choice because before he he was provided a copy of the limited warranty, and he signed a warranty registration that said, hey, I certify, that's the language from the warranty registration, I certify that I received a copy of this warranty, I've read it, I understand its terms, and I understand the intended use of this recreational vehicle. And as the court points out, twice in the warranty are the exclusions that this motorhome cannot be used for business purposes, which includes any unit purchased, titled, or registered in the name of a business. After he received the warranty, and after he certified that he read and understood the terms, he bought it in the name of his LLC anyway. The expert report we designated in support of summary judgment indicates that he received a pecuniary benefit of at least $21,000, but as much as $41,000 by doing this. Under the terms of the warranty, JACO had no obligation to authorize any free repairs to Nopik. However, as Judge Sykes points out, JACO did reserve the right to perform repairs on RVs that were excluded from warranty. But the warranty specifically provides that those repairs shall be considered goodwill repairs. And so on summary judgment, it was Mr. Nopik's burden as the party asserting waiver to set forth evidence of waiver. And what does the court have? Well, the court has an RV titled in the name of a business, it has two exclusions in the warranty saying that's not covered, and we have warranty repairs. There is no evidence of any affirmative act on the part of JACO that says, hey, we're waiving this right, we're relinquishing this right, we're giving you these warranty repairs. Now, in the appellant's brief, counsel raised two arguments that weren't raised below, and we point this out in the brief. This court has a longstanding tradition of not reversing district courts on grounds that weren't presented to it, and we don't think the court should abandon that approach today. But the claims fail substantively anyway. The first argument is that these two provisions, excluding the motorhome for coverage, are somehow inconsistent. They're not. They're not These two provisions are provided under both headings. One of them is titled what is not covered, the other one, events discharging Integra from obligations under warranty. At the end of the day, they both say that the RV is not covered if the RV is titled, registered, or purchased by a business. Mr. Nopik appears to take umbrage at the void language, but he ultimately, as he's struggling with this issue in his appellant's brief, he gets it right. He says, if voided, on page seven, if voided, none of the warranty terms would survive. Defendant and plaintiff would have no legal relationship under the warranty whatsoever. Frankly, we agree with that. If the RV is excluded from coverage, we have no relationship under this express warranty. The only claims that the plaintiff has raised in this lawsuit arise out of this express warranty. Mr. Nopik also brings up the report of Enoch Hutchcraft. Now, first of all, Enoch Hutchcraft is an expert that was retained after litigation to inspect the RV and provide opinions as to the condition of the RV and perhaps as to value. There has been no showing that this report, again, years after the facts underlying this litigation arose, how this report authored after litigation commenced could constitute evidence of a pre-suit waiver by JACO of the warranty exclusion. Moreover, Mr. Hutchcraft does draw distinctions in his report, but the distinctions he draws are factual. A motorhome is typically manufactured in two parts. There's a chassis with a drivetrain, and that comes from a chassis manufacturer. In this case, it was Spartan chassis. What JACO does is it takes that bare metal, almost, with an engine and a transmission, and it builds the RV on top of it. In his report, Mr. Hutchcraft will make the factual observation that, hey, this was the responsibility of JACO. This issue over here with the fuel gauge, that isn't JACO. That's part of the chassis. Ultimately, it would be the chassis manufacturer and their warranty which would cover that. That's all made clear within the warranty documents, and I believe in Mr. Hutchcraft's report. What Mr. Hutchcraft isn't doing, because it would be improper for him to do, is making any kind of legal conclusion about what exclusions could apply to this warranty. Unfortunately, the expert report of Mr. Hutchcraft just doesn't do what Mr. Nopik wants it to do. At the end of the day, Mr. Nopik chose to have his RV excluded from coverage, and his decision precludes his claim for breach of warranty. If there are no other questions, I'd ask the court to affirm the judgment of the district court. All right. Thank you, Mr. Kessler. Thank you. Mr. Green. Thank you, Your Honor. May it please the court. The issue was not weighed below regarding the arguments made on this appeal. The issue of the goodwill exception was raised by Appley in their reply brief to summary judgment only. It was not raised in the initial motion. This forum is the first opportunity that my client has had to argue this issue. Mr. Hutchcraft simply calls all of the defects, the long list of defects in his lengthy report, issues related to the warranty and to warranty repairs. Had Mr. Hutchcraft referred to them as goodwill repairs or repairs that were excluded under the warranty, there would be a different discussion here today. Counsel's argument characterizing the repairs as goodwill versus warranty, I would respectfully submit, is not proper. It is a factual determination to be made at trial and should not be made as a purely legal argument. We are viewing these facts in the light most favorable to the non-moving party, and that would be to Mr. Nopik, and I would respectfully request that the decision below be reversed for amended. All right. Thank you, Mr. Green. Thank you, Mr. Kessler. The case is taken under advisement.